Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

### FOR THE DISTRICT OF COLUMBIA CIRCUIT

————

Argued April 12, 2004        Decided June 11, 2004

No. 03-7047

THE HONORABLE BOB BARR,
APPELLANT

v.

WILLIAM JEFFERSON CLINTON, ET AL.,
APPELLEES

————

Appeal from the United States District Court
for the District of Columbia
(No. 02cv00437)

————

*Paul J. Orfanedes* argued the cause for appellant. With him on the briefs was *Larry E. Klayman*.

*Suzanne H. Woods* argued the cause for appellees. With her on the brief were *David E. Kendall*, *Roger W. Wilcox Jr.*, and *William Alden McDaniel Jr.* *John G. Perazich* and *Paul J. Cambria Jr.* entered appearances.

————

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

Before: EDWARDS, RANDOLPH, and TATEL, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* TATEL.

TATEL, *Circuit Judge*: In this lawsuit, Congressman Bob Barr charges that President Clinton and one of his political advisors unlawfully conspired with Larry Flynt, publisher of *Hustler* magazine, to gather and disseminate disparaging information about Barr in order to retaliate for his role in the Clinton impeachment proceedings. The district court dismissed the complaint, finding it time barred and, alternatively, that it failed to state a claim upon which relief could be granted. We affirm, but on different grounds. We affirm the dismissal as to Clinton and his advisor because the complaint fails to allege that either took any action within the statute of limitations to further the conspiracy, and as to Flynt because the complaint fails to allege that the disparaging information was either false or published with reckless or knowing disregard for its falsity, as required by the First Amendment.

## I.

Because the district court dismissed the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), we construe the complaint "liberally," granting plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C.Cir.1994) (reviewing 12(b)(6) dismissal); *accord Artis v. Greenspan*, 158 F.3d 1301, 1305–06 (D.C. Cir. 1998) (reviewing 12(b)(1) dismissal). Viewed through that lens, the complaint relates the following facts:

Congressman Bob Barr, who represented the seventh district of Georgia from 1995 until 2003, "was the first Congressman to call for [an] impeachment inquiry of former President . . . William Jefferson Clinton." Compl. ¶ 9. Barr "repeatedly and aggressively pressed" that position, *id.*, and also served as a House Manager during the U.S. Senate impeachment trial. *Id.* ¶ 17.

On October 4, 1998, Larry Flynt ran an advertisement in the *Washington Post* offering one million dollars to anyone who would admit to having had an affair with a member of Congress. *Id.* ¶ 15. Acknowledging that Flynt's professed objective was to "expose the hypocrisy of members of Congress," the complaint alleges that "[i]n reality," Flynt was acting "in concert with [defendants Clinton and James Carville, a senior member of Clinton's 1992 campaign staff, to] gather[ ] information from FBI and/or other government files about . . . Plaintiff Barr, and disseminate[ ] information from those files to the media in an attempt to intimidate, impede and/or retaliate against Plaintiff to prevent him from performing his official duties . . . and to harm Plaintiff Barr's reputation." *Id.*

In support of this allegation, the complaint asserts that Carville maintained files containing information about Barr which he had obtained from confidential government sources and "routinely disseminated this material to the media." *Id.* ¶ 10. In a January 7, 1999 press conference, Flynt's estranged daughter "stated that Flynt had likely been supplied by Defendant Carville with confidential FBI files to assist Flynt in his search for 'dirt' on Congressmen, including [Barr], in an on-going effort . . . to prevent them from performing their official duties." *Id.* ¶ 19. As to Clinton, the complaint alleges that he "approved and ratified" Flynt's efforts to intimidate Barr. *Id.* ¶ 18. The complaint cites a 1998 *Los Angeles Times* article stating: "[Clinton] laughed about the fact that Larry Flynt, publisher of Hustler magazine, had become the latest influence on the Washington political debate . . . [and] regaled his listeners with a description of a letter that Flynt wrote to independent counsel Kenneth W. Starr . . . congratulating Starr for aiding the cause of pornography." Elizabeth Shogren, "Clinton Puts His Faith in History," *L.A. Times*, Dec. 22, 1998, at A1.

On January 11, 1999, Flynt appeared on a television news program and, according to the complaint, divulged information from the government files, including that Barr "had not told the truth, under oath, in divorce proceedings, and that he had pressured his former wife into having an abortion."

Compl. ¶ 21. During a *Salon.com* interview on February 23, 1999, Flynt not only repeated those accusations, but also announced that he intended to publish a one-time issue called *The Flynt Report*, which would contain additional improperly obtained information about Barr and other officials. *Id.* ¶ ¶ 29–30.

On several occasions during the impeachment proceedings, Barr expressed his concern about defendants' alleged efforts to gather and disseminate negative information about him. He wrote to President Clinton on March 30, 1998, seeking access to all White House documents relating to him. *Id.* ¶ 13. On March 3 and April 2, 1999, he also wrote to Attorney General Janet Reno. Alleging that the attacks and threatened attacks by Carville, Flynt, and others amounted to "a deliberate and concerted effort to impede" the impeachment process, Barr requested a formal Justice Department investigation. *Id.* ¶ ¶ 32, 34. In response, the Justice Department informed Barr that it had reviewed the matter and determined that an investigation was unwarranted. *Id.* ¶ ¶ 33, 35.

Finally, on April 5, 1999, Flynt and L.F.P., Inc., his publishing company, released *The Flynt Report*. *Id.* ¶ 31. Attached to the complaint, the report states, among other things, that Barr "failed to tell the truth about adulterous sex while under oath in a 1986 deposition," and that, in contrast to his "public opposition to abortion," he "drove [his wife] to the clinic to have [an] abortion performed [and l]ater he returned to the facility to pick her up and paid for the procedure." *The Flynt Report* 20–24 (L.F.P., Inc. 1999).

On March 7, 2002, Barr filed suit in the United States District Court for the District of Columbia against defendants Clinton, Carville, Flynt, and L.F.P., Inc. In the only count at issue in this appeal, Barr claimed that the defendants violated 42 U.S.C. § 1985(1) by conspiring to prevent him from performing his official duties. Section 1985(1) makes it unlawful for "two or more persons . . . [to] conspire to prevent, by force, intimidation, or threat, any person . . . from discharging any duties [of public office]; . . . or to injure him in his person or property on account of his lawful discharge of the

duties of his office." 42 U.S.C. § 1985(1) (2000). Among other things, section 1985 plaintiffs must allege the elements of civil conspiracy, including: "an agreement to take part in an unlawful action or a lawful action in an unlawful manner." *Hall v. Clinton*, 285 F.3d 74, 83 (D.C. Cir. 2002). Seeking damages in excess of $30 million, *see* Compl. ¶ 41, Barr alleged that defendants:

> tacitly or explicitly agreed, in violation of 42 U.S.C. § 1985(1), to participate in a common scheme and unlawful on-going conspiracy . . . in furtherance [of which they] recommended, agreed to, and participated in obtaining information from Plaintiff's confidential FBI and/or other government files, in violation of [federal law], then disclosing that information to the public . . . [such that] Plaintiff was hindered in the lawful discharge of his duties . . . and suffered substantial damages, including, but not limited to loss of reputation and emotional distress.

*Id.* ¶ ¶ 38–40.

All defendants filed motions to dismiss under rules 12(b)(1) and 12(b)(6). *See* Fed. R. Civ. P. 12(b)(1) (lack of subject matter jurisdiction); 12(b)(6) (failure to state a claim). They argued that the complaint was barred by the three-year statute of limitations applicable to section 1985 claims. Alternatively, they argued that the complaint failed to state a claim for relief because (1) it pleaded insufficient facts to support the allegation that the defendants had entered an agreement and (2) it nowhere alleged that the information about Barr was either false or published with knowing or reckless disregard for its falsity, as required by the First Amendment. The district court granted the defendants' motions, ruling that the suit was untimely, and, in the alternative, that Barr failed to state a claim because the complaint insufficiently alleged the agreement element of conspiracy. *See Barr v. Clinton*, No. 02–437 (D.D.C. March 19, 2003).

Barr now appeals. Because the district court dismissed the complaint pursuant to rules 12(b)(1) and 12(b)(6), our review

is de novo.  *See Hall*, 285 F.3d at 81; *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).

## II.

We begin with the district court's dismissal of the complaint on the basis of the statute of limitations.  As mentioned above, "the relevant statute of limitations for a section 1985(1) violation in this jurisdiction is three years."  *Hall*, 285 F.3d at 82.  In *Lawrence v. Acree*, 665 F.2d 1319 (D.C. Cir. 1981), we explained that "the statute of limitations in a civil damages action for conspiracy runs separately from each overt act that is alleged to cause damage to the plaintiff."  *Id.* at 1324.

Because Barr filed his complaint on March 7, 2002, every alleged act that occurred prior to March 7, 1999 is time-barred.  Although acknowledging that the April 5, 1999 publication of *The Flynt Report* occurred within the limitations period, the district court nonetheless dismissed the entire complaint as untimely, relying largely on our statement in *Hall v. Clinton* that the three-year period begins "when the plaintiff has sufficient notice of the conduct . . . which is now asserted as the basis for [his] lawsuit."  285 F.3d at 82 (omission in original) (internal quotation marks omitted).  Applying that rule, the district court concluded that Barr had sufficient prior notice of the report's publication, pointing to Flynt's February statements to *Salon.com* announcing that the report would be published and to Barr's March 3 letter to the Attorney General requesting an investigation of Flynt.

We cannot agree with the district court's analysis.  In *Hall*, all allegedly unlawful conduct occurred *outside* the statute of limitations, and the question was whether the case could nevertheless go forward because the plaintiff filed suit within three years of discovering the allegedly unlawful conduct.  *Id.* Here, by contrast, the allegedly unlawful conduct—*The Flynt Report*'s publication—occurred *inside* the three-year period. To be sure, Barr had prior notice of Flynt's intent to publish the report, but Flynt's threat to do so gave Barr no knowledge of exactly what the report would contain, to whom it would be distributed, or even whether it would ever be

published. The complaint, moreover, alleges that publication of *The Flynt Report* represented a separate and distinct overt act in furtherance of the conspiracy—an act that, under *Lawrence*, triggered a new three-year limitations period. As Barr points out, dismissing his suit just because he had prior notice would be "the same as finding that a threat to assault someone, occurring outside the limitations period, would bar an action for a subsequent actual assault that occurred within the limitations period." Appellant's Br. at 15.

That said, our decision in *Lawrence* nevertheless requires affirmance of the district court's dismissal of the claims against two defendants—Clinton and Carville. In *Lawrence*, as here, all but one of the acts alleged in furtherance of a section 1985(1) conspiracy occurred outside the limitations period. 665 F.2d at 1323. Because the period runs separately from each overt act, we held that the statute of limitations "confine[d] our focus, for purposes of considering damages" to the single overt act within the limitations period, in that case, a negative performance evaluation. *Id.* at 1324. We therefore dismissed the claim with respect to two defendants who had not participated in the evaluation because "[t]here [wa]s no allegation that [they] furthered the conspiracy against" the plaintiff at any time during the statute of limitations. *Id.*

*Lawrence* is indistinguishable from this case. The complaint here alleges that only "Flynt and L.F.P. published *The Flynt Report*." Compl. ¶ 31. It does not allege that either Clinton or Carville participated in the report's publication or in any other act in furtherance of the conspiracy within the limitations period; Clinton's alleged approval rests on comments he made in 1998, and Carville's alleged disclosure of secret files to Flynt occurred sometime before January or February 1999.

Because the statute of limitations bars the claim against both Clinton and Carville, we confine our review of the district court's alternative basis for dismissing the complaint to the single overt act not barred by the statute of limitations—Flynt's and L.F.P.'s publication of *The Flynt Report*.

### III.

We affirm a district court's dismissal under Rule 12(b)(6) only if the "plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Browning*, 292 F.3d at 242. In this case, the district court granted the Rule 12(b)(6) motion because "Congressman Barr's allegations associated with *The Flynt Report* are bereft of any details substantiating the principal and essential element of a conspiracy, a 'meeting of the minds' between Defendants." *Barr*, slip op. at 17. Challenging that ruling, Barr insists that his allegations meet the minimal notice pleading standards of Federal Rule of Civil Procedure 8. *See* Fed. R. Civ. P. 8(a)(2) (requiring only a "short and plain statement of the claim"); *see also Swierkiewicz v. Sorema*, 534 U.S. 506, 512 (2002) ("Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." (internal quotation marks omitted)).

We need not resolve this question, however, for Flynt persuasively argues that the relief Barr seeks is precluded by the First Amendment. *See EEOC v. Aramark Corp.*, 208 F.3d 266, 268 (D.C. Cir. 2000) ("[B]ecause we review the district court's judgment, not its reasoning, we may affirm on any ground properly raised."). In *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964), the Supreme Court held that under the First Amendment, public officials claiming defamation must allege that the published information was both false and published with actual malice, i.e., with knowing or reckless disregard for its falsity. *See id.* at 279–80. Flynt argues that the *New York Times* standards apply to Barr's section 1985(1) claim insofar as it seeks damages for loss of reputation and emotional distress resulting from the actual publication of *The Flynt Report*. Barr responds only that he need not allege that the report was defamatory in order to state a section 1985(1) claim.

Although Barr is correct, *see Lawrence*, 665 F.2d at 1324 (section 1985(1) plaintiff is not required to allege that "each overt act . . . [is] independently actionable"), the fact that his

complaint alleges something other than a traditional defamation action does not mean that First Amendment protections are inapplicable. Both the Supreme Court and this court have made clear that the constitutional protections available to defendants charged with defaming public officials may extend to other civil actions alleging reputational or emotional harm from the publication of protected speech. In *Hustler Magazine v. Falwell*, 485 U.S. 46 (1988), where a public figure plaintiff sought damages for intentional infliction of emotional distress against the publisher (also Larry Flynt) of a lewd cartoon parody of the plaintiff, the Supreme Court extended the *New York Times* standards to the intentional infliction claim, finding such safeguards "necessary to give adequate 'breathing space' to the freedoms protected by the First Amendment." *Id.* at 56; *cf. Cohen v. Cowles Media Co.*, 501 U.S. 663, 671 (1991) (holding that *New York Times* does not apply to a promissory estoppel claim seeking damages for economic rather than emotional or reputational harm). We followed a similar path in *Moldea v. New York Times Co.*, 22 F.3d 310 (D.C. Cir. 1994), where an author sued a newspaper for the publication of a negative book review, alleging defamation and false light invasion of privacy. We held that because the plaintiff had failed to meet the burdens of proof associated with his defamation claim, the "related claim for false light invasion of privacy must also fail." *Id.* at 319. As we explained, "a plaintiff may not use related causes of action to avoid the constitutional requisites of a defamation claim." *Id.* at 319–20.

Although we have not previously addressed the First Amendment issue in the section 1985(1) context, the Sixth Circuit, in *Windsor v. The Tennessean*, 719 F.2d 155 (6th Cir. 1983), recognized that "the *New York Times* case dealt with state tort law," but saw "no reason not to apply that [constitutional] test to [a] section 1985(1) action[ ]" alleging conspiracy to injure a public official through the publication of disparaging newspaper articles. *Id.* at 162. In this circuit, District Judge Kollar–Kotelly reached the same conclusion in *Sculimbrene v. Reno*, 158 F. Supp. 2d 8 (D.D.C. 2001), explaining that "[l]ike the libel statute at issue in *New York Times v.*

*Sullivan* and the Sedition Act of 1789, Section 1985 of Title 42 carries the *potential* to infringe upon a speaker's First Amendment right if certain safeguards are not imposed." *Id.* at 18. Judge Kollar–Kotelly concluded that "the constitutional considerations and protections afforded to defendants in a defamation action seem equally applicable" to a section 1985 claim alleging that defendants conspired to publish information injuring a plaintiff's reputation. *Id.*

Persuaded by the reasoning of the Sixth Circuit and Judge Kollar–Kotelly, we hold that First Amendment protections apply to section 1985 claims like the one presented here. Barr's cause of action rests entirely on his claim that Flynt's conspiratorial publication of *The Flynt Report* injured his reputation and mental state. Indeed, ruling otherwise would allow public officials to recast defamation claims barred by *New York Times* as section 1985(1) conspiracies, thus choking off the "breathing space" necessary to safeguard "the freedoms protected by the First Amendment." *Hustler*, 485 U.S. at 56. Because Barr's complaint alleges neither that the information in *The Flynt Report* is false nor that the report was published with actual malice, Barr cannot obtain damages for the report's publication.

In affirming the district court's 12(b)(6) ruling on this ground, we emphasize that we have not reached an issue that arose at oral argument in response to questions from the court, i.e., whether or how Flynt's First Amendment defense might be affected by the complaint's allegation that he participated in illegally obtaining the published materials. *Cf. Bartnicki v. Vopper*, 532 U.S. 514, 528–29 (2001) (leaving open the question of whether the First Amendment would permit the punishment of the publication of truthful information obtained unlawfully); *Fla. Star v. B.J.F.*, 491 U.S. 524, 535 n.8 (1989) (same). Barr neither raised this issue in response to Flynt's First Amendment arguments nor cited any of the relevant authority either before the district court or here. Indeed, nothing in Barr's appellate briefs can arguably be read as encompassing the issue. Because Barr failed to raise the issue and because Flynt has had no opportunity to respond, we will not address it. *See Carducci v. Regan*, 714

F.2d 171, 177 (D.C. Cir. 1983) ("[A]ppellate courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them. . . . [W]here counsel has made no attempt to address the issue, we will not remedy the defect, especially where, as here, important questions of far-reaching significance are involved." (internal quotation marks omitted)).

The district court's judgment is affirmed.

*So ordered.*