**Harold FISHER, et al., Plaintiffs,**

v.

**WASHINGTON TEACHERS' UNION, et al., Defendants.**

**No. CIV.A.04–2059(CKK).**

United States District Court, District of Columbia.

Dec. 17, 2004.

---

Nicole Christine Mason, Leftwich & Douglas, PLLC, Washington, DC, William J. Wright, Jr., for Plaintiffs.

David John Strom, American Federation of Teachers, AFL–CIO, Washington, DC, for Defendants.

## MEMORANDUM OPINION

KOLLAR–KOTELLY, District Judge.

Plaintiffs brought this suit against Defendants, the Washington Teachers' Union and the American Federation of Teachers, seeking an injunction requiring Defendants to include Plaintiff Harold Fisher on the ballot in a presently ongoing election for officers of the Washington Teachers' Union. Plaintiffs argue that Fisher meets the requirements to run for office, and that preventing his candidacy infringes on the rights of members to nominate and vote for candidates of their choice.[1]

Plaintiffs filed their Complaint, Motion for Temporary Restraining Order, and Motion for Preliminary Injunction after 8:00 P.M. on Wednesday, November 24, 2004, on the eve of Thanksgiving. On Friday, November 26, 2004, Judge Ellen Segal Huvelle held a hearing on Plaintiffs' Motion for Temporary Restraining Order. Judge Huvelle denied the motion, finding that Plaintiffs had failed to demonstrate a likelihood of success on the merits.

On November 30, 2004, the Court determined, with the parties' consent, that Plaintiffs' Complaint would be more properly addressed on the merits, rather than on Plaintiffs' Motion for Preliminary Injunction. Accordingly, the Court ordered

---

1. Plaintiff William Wright is a member of the Washington Teachers' Union who seeks to nominate and vote for Plaintiff Fisher.

a compressed briefing schedule,[2] and Defendants filed the instant Motion to Dismiss and Motion for Summary Judgment. After careful consideration of these motions, the parties' briefs, and the relevant law, the Court finds that Plaintiffs' claim raised under Title I of the Labor–Management Reporting and Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. § 401, et seq., must fail on summary judgment. The Court further finds that it lacks jurisdiction over Plaintiffs' claim raised under Title IV of the LMRDA, and accordingly, this claim must be dismissed.

## I. BACKGROUND

Plaintiff Fisher was employed by the Board of Education from 1962 to 1998 as a classroom teacher, attendance officer and attendant counselor. Pls.' Supp. Brief at 3. In 1998, Plaintiff Fisher was separated from his employment with the Board of Education due to a reduction in force, at which point he was an attendance officer. *Id.* Plaintiff does not have a right to reinstatement. Plaintiff Fisher was a member of the Washington Teachers Union ("WTU") during his employment, and has maintained his membership in good standing with the WTU, despite the termination of his employment. *Id.* Plaintiff Fisher paid his membership dues for the 2004–2005 year on October 4, 2004.[3] *Id.* Plaintiff William Wright, Jr. is also a dues paying member in good standing with the WTU. Compl. ¶ 2.

In January 2003, Defendant WTU was placed under the supervision of an Administrator by Defendant American Federation of Teachers ("AFT"), pursuant to the AFT's Constitution. Compl. ¶ 5. George C. Springer was appointed to act as the Administrator for the WTU. *Id.* ¶ 6. In his position as Administrator, Springer oversaw the approval of an amended WTU Constitution and Bylaws, which was approved by the WTU membership on October 21, 2004. *Id.* ¶ 9. Under the AFT's Constitution, Springer's responsibilities include conducting "an election in accordance with the applicable provisions of the governing documents of the affected local or state federation and the AFT constitution" to fill officer vacancies in the local union, before the termination of his Administratorship. *Id.* ¶ 10 (quoting AFT Const. Art. VI § 15(e)). The Administrator has been overseeing the WTU election of a new slate of officers to be completed in late December, 2004. *Id.* ¶ 11.

On November 10, 2004, Administrator Springer wrote a letter to Plaintiff Fisher stating that Fisher was ineligible to run for office. *Id.* Ex. F. Similarly, Plaintiff was notified by the WTU Elections Committee on November 15, 2004, that his petition for the office of president was not accepted because Plaintiff was ineligible to run for the office. *Id.* Ex. G. On November 12, 2004, Plaintiff Fisher was nominated by a petition signed by WTU members. *Id.* ¶ 13. Although Plaintiff wrote to Springer and to AFT's general counsel indicating that he believed he was eligible

---

2. Plaintiffs were provided the opportunity to supplement their Complaint, in order to fully explain their claims. *See* Pls.' Supp. Brief (December 3, 2004).

3. Defendants, maintaining that Plaintiff Fisher is ineligible to run for election, state that the WTU returned Plaintiff Fisher's dues in a check mailed on December 2, 2004. Plaintiffs have supplied a memorandum from the

Administrator indicating the WTU's position that it planned to refund the dues of individuals who paid dues with the expectation that they would run for office or vote in the election, but whom the WTU has found to be ineligible. Compl. Ex. E. The Court finds that whether or not Plaintiff has received a refund of his dues is immaterial to the Court's resolution of the instant motions.

to run for office in the WTU election, *see id.* Ex. H, J, Administrator Springer reiterated his position that Plaintiff Fisher was ineligible, *id.* Ex. K.

On December 1 or 2, 2004, ballots for the WTU election were mailed to voters. The WTU plans to count the votes on December 28, 2004.[4] Defs.' Reply to Pls.' Opp. to Summ. J. (Defs.' Summ. J. Reply) Ex. 2 (Strom Decl.) ¶¶ 4–5. Plaintiff Fisher's name does not appear on the ballot. Pl.'s Opp. to Def.'s Mot. for Summ. J. (Pls.' Summ. J. Opp.) at 2. However, the ballot does include the name of Rachel Hicks, a permanent teacher who is presently on a leave of absence from the District of Columbia Public Schools while she works as a member of WTU's staff.[5] Pls.' Stmt. of Facts. ¶ 8; Defs.' Summ. J. Reply Ex. 1 (Springer Decl.) ¶¶ 2, 4. Pursuant to the WTU's Collective Bargaining Agreement, as a permanent teacher on leave to work with the WTU, Hicks retains her right to reinstatement as a teacher in the District of Columbia Public School System. Pls.' Supp. Brief Ex. 4 (Collective Bargaining Agreement) Art. XIX § D(5).

Plaintiffs subsequently filed suit in the United States District Court for the District of Columbia, seeking a determination that Plaintiff Fisher is eligible to run in the presently ongoing election. Although the ballots have already been mailed, Plaintiff requests an order from the Court requiring that new ballots including Fisher's name as a candidate for WTU President be mailed to voters, and that the ballots not be counted until the ballots including Plaintiffs' name have been returned. *See* Pls.' Supp. Brief at 1.

## II. LEGAL STANDARD

In evaluating a motion to dismiss for lack of subject matter jurisdiction filed pursuant to Federal Rule of Civil Procedure 12(b)(1), "[t]he plaintiff bears the burden of persuasion to establish subject matter jurisdiction by a preponderance of the evidence." *Pitney Bowes, Inc. v. United States Postal Serv.*, 27 F.Supp.2d 15, 18 (D.D.C.1998). In reviewing such a motion, the Court must accept as true all the factual allegations contained in the Complaint. *Leatherman v. Tarrant County Intelligence & Coordination Unit,* 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). It is also well-established that the Court is not limited to the allegations made in the Complaint; rather the Court may also consider material outside of the pleadings in order to determine whether the Court has jurisdiction over the case. *See, e.g., Equal Employment Opportunity Comm'n v. St. Francis Xavier Parochial Sch.,* 117 F.3d 621, 624–25 n. 3 (D.C.Cir. 1997)

Similarly, in considering a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure

---

4. On a conference call held on November 30, 2004, Defendants had initially indicated to the Court and to Plaintiffs that the ballots had been mailed on November 29, 2004, and that the votes would be counted on December 21, 2004. Plaintiffs disputed this in their Opposition to Defendants' Motion for Summary Judgment, indicating that the ballots were not mailed on November 29, 2004, and that the ballots reflected a counting date of December 28, 2004. Pls.' Opp. at 1. In their Reply, Defendants explain that the ballots were initially misprinted, which resulted in a two day delay in sending them out, and which ulti-

mately led to a decision to postpone the date to count the ballots. *See* Def.'s Summ. J. Reply. The Court is satisfied that the misrepresentation was inadvertent, and that the precise dates are immaterial to the Court's resolution of the parties' disputes.

5. Defendants have supplied the Court with the signed paperwork authorizing Hicks to take a leave of absence from the District of Columbia Public Schools to work as a full time WTU employee. *See* Docket Entry [16].

12(b)(6), this Court must construe the allegations and facts in the Complaint in the light most favorable to the plaintiff, and must grant the plaintiff the benefit of all inferences that can be derived from the facts alleged. *Barr v. Clinton*, 370 F.3d 1196, 1199 (D.C.Cir.2004). Dismissal under Rule 12(b)(6) is appropriate only if the defendant can demonstrate "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–6, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

Under the summary judgment standard, Defendant, as the moving party, bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(c). Plaintiff, in response to Defendant's motion, must "go beyond the pleadings and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, 'designate' specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. 2548 (internal citations omitted).

The Court is to draw all inferences from the supporting records submitted in favor of the party opposing the summary judgment motion. However, mere allegations or denials in the non-moving party's pleadings are insufficient to defeat an otherwise proper motion for summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Furthermore, the mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct.

2505, 91 L.Ed.2d 202 (1986); rather, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law," *id.* at 251, 106 S.Ct. 2505. Where the nonmovant's evidence is insufficient to allow a reasonable jury to return a verdict in its favor as a matter of law, or is merely colorable or not significantly probative, then the movant is entitled to summary judgment. *See Anderson*, 477 U.S. at 249, 106 S.Ct. 2505.

## III. DISCUSSION

### A. The Nature of Plaintiffs' Claims

Plaintiffs claim that Plaintiff Fisher is eligible to run for election as a candidate for president in the WTU's election, and dispute Defendants' interpretation of the eligibility requirements under the WTU's Constitution and Bylaws. Plaintiffs claim that, because the Constitution and Bylaws permit Plaintiff Fisher's candidacy, Defendants' decision to exclude Fisher amounts to a violation of Title I of the Labor–Management Reporting and Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. § 401, *et seq.*, which guarantees that "[e]very member of a labor organization shall have equal rights and privileges within such organization to nominate candidates [and] to vote in elections or referendums of the labor organization ... subject to reasonable rules and regulations in such organization's constitution and bylaws." 29 U.S.C. § 411(a)(1). Specifically, Plaintiffs claim that Defendants have applied the eligibility requirements unequally, because they have permitted Rachel Hicks, who like Fisher is not currently employed by District of Columbia Public Schools, to run for office. Plaintiffs claim that through this allegedly unequal treatment, Defendants have denied Plaintiff Wright the op-

portunity to nominate and vote for Fisher, his candidate of choice.

Defendants' Motion to Dismiss raises the significant threshold question of whether Plaintiffs' claims arise pursuant to Title I or Title IV of the LMRDA. Title I, as quoted above, protects union members against discriminatory application of union rules. *See* 29 U.S.C. § 411(a)(1). Title I further provides that "[a]ny person whose rights secured by the provisions of this subchapter have been infringed by any violation of this subchapter may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate." 29 U.S.C. § 412.

Title IV of the LMDRA grants jurisdiction over union election disputes to the Secretary of Labor, and provides a post-election procedure for resolution of these disputes. Title IV states:

> In any election required by this section which is to be held by secret ballot a reasonable opportunity shall be given for the nomination of candidates and every member in good standing shall be eligible to be a candidate and to hold office (subject to section 504 of this title and to reasonable qualifications uniformly imposed) . . . .

29 U.S.C. § 481(e). In the event a union member disputes election proceedings, Title IV provides that the member "may file a complaint with the Secretary within one calendar month thereafter alleging the violation of any provision of section 481 of this title (including violation of the constitution and bylaws of the labor organization pertaining to the election and removal of officers)." 28 U.S.C. § 482(a). It is then within the Secretary's jurisdiction to investigate the complaint and file a civil action in federal court against the labor organization, if the Secretary finds probable cause

to believe that a violation has in fact occurred. *See* 29 U.S.C. § 482(b).

The Supreme Court has considered the distinction between Title IV and Title I, and has held that the questions relating to the validity of eligibility requirements set by a union's constitution and bylaws arise under Title IV, and are distinct from questions relating to the discriminatory application of union election rules, which properly arise under Title I. *See Calhoon v. Harvey,* 379 U.S. 134, 85 S.Ct. 292, 13 L.Ed.2d 190 (1964). In *Calhoon,* members of a union alleged that certain provisions of a union's constitution and bylaws violated the LMRDA because the provisions infringed their right to nominate candidates in an election. The Supreme Court squarely rejected the plaintiffs' attempt to invoke Title I jurisdiction by alleging that union bylaws and constitutional provisions infringed the Title I right to nominate candidates. *See Calhoon,* 379 U.S. at 138, 85 S.Ct. 292. The Court labeled this

> an attempt to sweep into the ambit of their right to sue in federal court if they are denied an equal opportunity to nominate candidates under [29 U.S.C. § 411(a)(1) ], a right to sue if they are not allowed to nominate anyone they choose regardless of his eligibility and qualifications under union restrictions. But Title IV, not Title I, sets standards for eligibility and qualifications of candidates and officials and provides its own separate and different administrative and judicial procedure for challenging those standards.

*Id.* The Court went on to say that the LMRDA "itself shows clearly by its structure and language that the disputes here, basically relating as they do to eligibility of candidates for office, fall squarely within Title IV of the Act and are to be resolved by the administrative and judicial procedures set out in that Title." *Id.* at 141, 85

S.Ct. 292. Alternatively, the Court found that the district court's jurisdiction under Title I "depends entirely upon whether this complaint showed a violation of rights guaranteed by [Title I, 29 U.S.C. § 411(a)(1)] .... [P]ossible violations of Title IV of the Act regarding eligibility are not relevant in determining whether or not a district court has jurisdiction under [Title I, 29 U.S.C. § 412]." *Id.* at 139, 85 S.Ct. 292.

Defendants argue that Plaintiffs' claims arise entirely under Title IV because, "[w]hether WTU was right or wrong as to Fisher's compliance [with WTU eligibility regulations] is a Title IV issue within the exclusive competency of the Secretary of Labor." Defs.' Mot. to Dismiss at 13. In their Motion to Dismiss, Defendants address Plaintiffs' argument that a Title I violation has occurred only to the extent that they argue "the finding of Fisher's lack of qualification and ineligibility did not infringe upon any member's right to nominate or vote (including Mr. Wright)." *Id.* at 14. Defendants take the position that "[t]he right to nominate or vote does not include the right to nominate or vote for an ineligible candidate. And eligibility to run for office is exclusively a Title IV issue to be determined by the Secretary of Labor." *Id.* Defendants characterize Plaintiffs' claims as "asking the Court to usurp the exclusive jurisdiction of the Secretary of Labor and make an eligibility determi-nation that is beyond the Court's authority." *Id.* at 8.

Plaintiffs, for their part, argue that their claims arise entirely under Title I, and as such are properly before this Court.[6] They argue that their challenge to the application of the WTU Constitution and Bylaws to Fisher's candidacy is subsumed into their Title I allegations of unequal treatment, because "Plaintiffs have alleged that WTU has unevenly applied its eligibility criteria making it impossible for Plaintiff Wright (and other supporters of Plaintiff Fisher) to nominate and vote for Plaintiff Fisher in WTU's elections." Pls.' Opp. to Mot. to Dismiss at 11. Plaintiffs argue that the facts of this case are distinguishable from the facts in *Calhoon*, because Plaintiffs are not challenging the validity of the Constitution and Bylaws themselves, but rather the Administrator's unequal application of them. *Id.* at 7 ("The present action is clearly distinguishable from *Calhoon* as Plaintiffs have alleged that they have been discriminated against and denied their rights to nominate and vote because the same eligibility qualifications have not been applied to all members and candidates."). In support of their allegations of unequal treatment, Plaintiffs claim that Rachel Hicks, a teacher on a leave of absence who is working at the WTU, and Plaintiff Fisher have been improperly subject to different standards of eligibility.

---

**6.** The Court notes that Plaintiffs' Complaint contains only the faintest whiff of a Title I claim. The Complaint focuses almost exclusively on Plaintiffs' arguments as to why Plaintiff Fisher is eligible under the applicable sections of the Constitution and Bylaws, and remarks briefly that in preventing Fisher from running, "Plaintiff Wright has been denied the right to nominate and vote for the candidate of his choice ...." Compl. ¶¶ 27–28. Indeed, Plaintiffs' Complaint totally fails to mention that the regulations were applied to Plaintiff Fisher differently that they were applied to another candidate, Rachel Hicks. Similarly, Plaintiffs' Supplemental Brief in support of their Complaint is primarily a merits argument about Fisher's eligibility under the Constitution and Bylaws. *See generally* Pls.' Supp. Brief. Plaintiffs only shifted their emphasis to the alleged unequal application of these regulations in their Opposition to Defendants' Motion to Dismiss, after Defendants raised their challenge to the Court's jurisdiction.

The Court finds that neither party has properly characterized Plaintiffs' claims. When examined closely, Plaintiffs have raised two separate challenges. First, Plaintiffs have challenged the Administrator's interpretation of the applicable provisions of the WTU's Constitution and By-laws. This claim must be raised under Title IV of the LMRDA. Second, Plaintiffs have alleged that the Administrator has applied the applicable provisions unequally to two persons Plaintiffs argue are similarly situated, in that the Administrator permitted the candidacy of Rachel Hicks, while prohibiting that of Plaintiff Fisher. This claim may be raised under Title I. In this way, the instant case differs from *Calhoon* because Plaintiffs here have alleged that different qualifications were required of different putative candidates for election.

Plaintiffs liken the facts of this case to *Kupau v. Yamamoto*, 622 F.2d 449 (9th Cir.1980), in which the Ninth Circuit found that the plaintiffs had properly invoked the Court's jurisdiction by raising a violation of Title I where they complained of the uneven application of eligibility requirements in a union election. *See* Pls.' Opp. to Mot. to Dismiss at 12. The Ninth Circuit held that although "[d]isputes over the propriety of eligibility rules ... present only a Title IV basis for relief .... [w]here the allegation is that the eligibility rules have been applied discriminatorily ... then a Title I action is presented." *Kupau*, 622 F.2d at 454. That court went on to state that "[t]he fact that the dispute may ultimately determine the eligibility of a particular candidate does not cause the Title I claim to be preempted by Title IV." *Id.* Leaving aside the fact that Ninth Circuit precedent is not binding on this Court, the Court finds that the Ninth Circuit's reasoning is not at odds with this Court's decision that Plaintiffs' allegations can be sorted into separate claims under Title I

and Title IV. The fact that Plaintiffs have raised an unreviewable Title IV claim that is factually intertwined with their Title I claim, does not prevent this Court from finding that it has jurisdiction over the subject matter of Plaintiffs' Title I claim.

The Court acknowledges that there is some degree of overlap between the two claims. Plaintiffs' allegations can be read to claim that the Administrator's interpretation of the regulations as they apply to Fisher is different from the interpretation he applied to Hicks, and that therefore the analysis of the election provisions of the Constitution and Bylaws is tied to the analysis of unequal treatment. However, the Court finds that separation of Plaintiffs' disputes with respect to the Administrator's actions into two claims is a straightforward proposition, and is required by the Supreme Court's holding in *Calhoon*. Indeed, "Title IV, not Title I, sets standards for eligibility and qualifications of candidates and officials and provides its own separate and different administrative and judicial procedure for challenging those standards." Accordingly, the Court is not in a position to consider Plaintiffs' challenges to the Administrator's interpretation of the WTU's eligibility requirements under the rubric of Title I. Therefore, the Court addresses Plaintiffs' claims separately.

### B. Plaintiffs' Claim Under Title I of the LMRDA Must Fail

■ Plaintiffs claim that Defendants have violated Title I of the LMRDA because Defendants have allegedly applied the eligibility requirements for candidacy in union elections unequally with respect to Plaintiff Fisher and Rachel Hicks, another candidate for President. Title I guarantees that "[e]very member of a labor organization shall have equal rights and privileges within such organization to

nominate candidates [and] to vote in elections or referendums of the labor organization ... subject to reasonable rules and regulations in such organization's constitution and bylaws." 29 U.S.C. § 411(a)(1). In the event that these rights are infringed, a plaintiff "may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate." 29 U.S.C. § 412.

Defendants moved for summary judgment on Plaintiffs' claims, and in their Opposition, Plaintiffs developed their comparison between Fisher and Hicks.[7] After a close examination of the circumstances surrounding Hicks' candidacy and Plaintiff Fisher's candidacy, it is clear that Hicks and Plaintiff Fisher are *not* similarly situated individuals. Consequently, Plaintiffs have failed to demonstrate unequal treatment of these two individuals by Defendants.

Until 1998, Plaintiff Fisher was employed by the Board of Education as a classroom teacher, attendance officer and attendant counselor. Each of these positions is considered a teaching position under the WTU's Collective Bargaining Agreement. As a result of a reduction-in-force in 1998, Plaintiff Fisher was separated from his employment with the Board of Education, and does not have a right to reinstatement to a position with the Board of Education. Plaintiff Fisher was a member of the Washington Teachers Union during his employment, and maintained his membership in good standing with the WTU, even after he was no longer employed by the Board of Education.

Rachel Hicks is not presently employed as a teacher with the District of Columbia Public Schools. Rather, she is a permanent teacher who has taken a leave of absence from the school system while she works as a member of WTU's staff. Pls.' Stmt. of Facts. ¶ 8; Defs.' Summ. J. Reply Ex. 1 (Springer Decl.) ¶¶ 2, 4. The WTU's Collective Bargaining Agreement permits a permanent teacher who takes a leave of absence to work with the WTU, to retain his or her right to reinstatement as a teacher in the District of Columbia Public School System. Pls.' Supp. Brief Ex. 4 (Collective Bargaining Agreement) Art. XIX § D(5).

Plaintiffs' specific allegations are that "while Plaintiff Fisher has not been permitted to run for WTU office ..., Ms. Rachel Hicks, a candidate who is, *upon information and belief,* neither a retiree nor a current teacher, but rather a member of WTU's staff, has been permitted to

---

**7.** Plaintiffs argue in their Opposition to Defendants' Motion for Summary Judgment that the Court should strike Defendants' Motion because it was not accompanied by a statement of material facts. *See* Pls.' Opp. to Mot. for Summ. J. at 2–3. Although Plaintiffs are correct that such a statement is generally a required part of a motion for summary judgment, *see* L.Cv.R. 7(h) and 56.1, the Court has determined that Defendants' Motion for Summary Judgment is properly before the Court. A statement of material facts aids the deciding court in its analysis of parties' factual and legal allegations. However, in this case, Defendants have not, as a practical matter, challenged Plaintiffs' facts. Plaintiffs' Complaint is quite broad and unrefined, and Defendants' Motion for Summary Judgment was conse-

quently not based heavily on the factual allegations in this case. Furthermore, Defendants rely largely on documents supplied by Plaintiffs as attachments to the Complaint and Supplemental Brief. In the end, the only factual dispute was over whether Plaintiff Fisher's dues had been refunded to him, which is not material to the Court's analysis. Defendants have not raised any dispute with respect to Plaintiffs' facts about Rachel Hicks, except to provide documentation that Hicks is on an approved leave of absence from her permanent teaching position. Indeed, Defendants' assertions about Hicks' leave of absence and her right to reinstatement are supported by the WTU collective bargaining agreement supplied by Plaintiffs with their Supplemental Brief.

so participate in the election at issue." Pls.' Opp. to Mot. for Summ. J. at 4 (emphasis added). Plaintiffs claim that in allowing Hicks to run while excluding Plaintiff Fisher, Defendants have violated the Title I guarantee of "equal rights and privileges ... to nominate candidates [and] vote in elections ... subject to reasonable rules and regulations" in WTU's Constitution and Bylaws. 29 U.S.C. § 411(a)(1).

Plaintiffs argue that Fisher and Hicks are similarly situated because neither is a "current teacher," but that the WTU has permitted Hicks' candidacy while preventing Plaintiff Fisher from running. Pls.' Opp. to Mot. for Summ. J. at 8. Plaintiffs point to the WTU's Constitution and Bylaws for language indicating that former teachers are eligible to run for office, and state that these regulations have been un-

equally applied to Hicks and Fisher.[8] *Id.* at 7.

It is clear, however, that Hicks' and Fishers' situations are factually distinct. Unlike Hicks, Fisher, is a former teacher who was subject to a reduction-in-force, and has no employment relationship with the school system and no right of reinstatement. As such, Hicks is not an appropriate comparator for Fisher in Plaintiffs' allegations of unequal treatment.

Furthermore, the WTU contains a specific provision that permits Hicks' candidacy. The WTU Constitution specifically states that "[m]embers of the Union staff who have been teachers shall be eligible for membership, but shall not be eligible to run for office unless a leave of absence is taken."[9] *Compl.* Ex. B (WTU Const.)

8. Plaintiffs claim that Defendants improperly focus on Article VII § 2(B) of the WTU Bylaws in denying Plaintiff Fisher's eligibility, *see* Pls.' Opp. to Mot. for Summ. J. at 7, which states that "[o]nly current District of Columbia Public Schools teachers and full dues paying members shall be eligible to run for office in Local # 6," Compl. Ex. C (WTU Bylaws) Art. VII § 2(B). Plaintiffs argue that this provision should be read in conjunction with Article III § 2, which provides that "[a]ny member who was in good standing while an employee of the Board of Education may retain his membership." Pls.' Opp. to Mot. for Summ. J. at 7 (quoting WTU Bylaws Art. III § 2). Similarly, Plaintiffs argue that Article IV § 1 of the Bylaws should similarly inform Defendants' eligibility determination with respect to Fisher. *See* Pls.' Opp. to Mot. for Summ. J. at 7. That provision states that "[m]embers who pay full dues shall vote on all issues concerning the Washington Teachers Union and shall be eligible to run for elected office." Compl. Ex. C (WTU Bylaws) Art. IV § 1. Finally, Plaintiffs claim that Defendants have not acknowledged that Article III of the WTU Constitution "recognizes that a class of persons other than current teachers may run for WTU office as it provides that members of WTU's staff *who have been* teachers (i.e., they are not currently) are *eligible to* run for WTU office if they take a leave of

absence." Pls.' Opp. to Mot. for Summ. J. at 7–8 (citing Compl. Ex. B (WTU Const.) Art. III, which states that "[m]embers of the Union staff who have been teachers shall be eligible for membership, but shall not be eligible to run for office unless a leave of absence is taken."). These arguments apply to Plaintiffs' claim under Title IV, and consequently the Court refrains from considering them.

9. While the Court finds that this provision is sufficient to distinguish between Hicks and Fisher, the Court also notes that Hicks could arguably be considered a "current teacher." Hicks is on a recognized leave of absence while working for the WTU, and retains her right to reinstatement as a teacher in the District of Columbia Public Schools. Although she is not presently teaching and is not paid by the school district, she has the right to reinstatement in a teaching position comparable to the one she held before her leave of absence. Not only does this distinguish Hicks from Fisher factually, but it also places her in a different light vis-a-vis the eligibility provision of the WTU's Bylaws, which states that "[o]nly current District of Columbia Public Schools teachers and full dues paying members shall be eligible to run for office in Local # 6," Compl. Ex. C (WTU Bylaws) Art. VII § 2(B).

Art. III. As a permanent teacher who has taken a leave of absence from the school system in order to serve on the WTU staff, Hicks is eligible to run for office under this provision, which is wholly inapplicable to Plaintiff Fisher.

In light of the Court's finding that Plaintiff Fisher and Rachel Hicks are not similarly situated, it is clear that Plaintiffs' claim that Defendants have violated Title I of the LMRDA by unequally applying the eligibility requirements for candidacy in union elections must fail.[10]

### C. The Court Lacks Jurisdiction Over Plaintiffs' Claim Under Title IV of the LMRDA

■ To the extent that Plaintiffs raise a challenge to the Administrator's interpretation of the eligibility criteria included in the WTU's Constitution and Bylaws, these claims clearly fall under Title IV of the LMRDA. Title IV provides post-election procedures for union election disputes, and vests jurisdiction over such disputes with the Secretary of Labor. *See* 29 U.S.C. § 482(a) (members disputing union election proceedings "may file a complaint with the Secretary within one calendar month thereafter alleging the violation of any provision of section 481 of this title . . . ."). It is then within the Secretary's purview to investigate the complaint and, if the Secretary finds sufficient proof of an unremedied violation, to bring a civil action in federal court. *See* 29 U.S.C. § 482(b).

Supreme Court precedent is clear on this point. The federal courts lack jurisdiction over individuals' claims under Title IV; rather, claims under Title IV must be brought first to the Secretary of Labor, who then in turn determines whether to file suit in federal court. This Court clearly lacks jurisdiction over these claims. *See Calhoon*, 379 U.S. at 140–41, 85 S.Ct. 292; *see also Crowley*, 467 U.S. at 528, 104 S.Ct. 2557 (noting that Title IV provides an "elaborate postelection procedure aimed solely at protecting union democracy through free and democratic elections, with primary responsibility for enforcement lodged with the Secretary of Labor."). Although Plaintiffs appear to have stated a claim under Title IV, the Court is not in a position to make a determination with respect to the eligibility requirements in WTU's Constitution and Bylaws. Whether the Administrator and WTU have properly applied the eligibility criteria for candidacy in the presently ongoing election to Plaintiff Fisher is a question within the exclusive jurisdiction of the Secretary of Labor. Accordingly, the Court lacks jurisdiction to consider this claim.

### IV. CONCLUSION

After careful consideration of Defendants' Motion to Dismiss and Motion for Summary Judgment, the parties' briefs,

---

10. In light of the Court's finding that Plaintiffs have failed to demonstrate that Defendants have applied the WTU's election eligibility requirements unequally, the Court shall abstain from addressing the not insignificant question of whether Plaintiffs' requested injunctive and declaratory relief would be appropriate in the midst of an ongoing election. In *Local No. 82, Furniture and Piano Moving, Furniture Store Drivers, Helpers, Warehousemen and Packers v. Crowley*, 467 U.S. 526, 104 S.Ct. 2557, 81 L.Ed.2d 457 (1984), the Supreme Court held that the district court had overstepped the bounds of what could be considered "appropriate relief" within the meaning of Title I, 29 U.S.C. § 412, when it enjoined an ongoing union election based on allegations of Title I violations. *Id.* at 546, 104 S.Ct. 2557. The Supreme Court went on to state that "whether suits alleging violations of Title I of the LMRDA may properly be maintained during the course of a union election depends upon the appropriateness of the remedy required to eliminate the claimed statutory violation." *Id.* at 550, 104 S.Ct. 2557.

and the relevant law, the Court finds that Plaintiffs' claims must fail. The Court has separated out Plaintiffs' allegations into two claims. The first, a claim under Title I of the LMRDA, fails because Plaintiffs have failed to demonstrate that Plaintiff Fisher is similarly situated to an individual who was treated differently with respect to the WTU election eligibility requirements. Plaintiffs' second claim disputing the Administrator's interpretation of the WTU's eligibility requirements contained in the union's Constitution and Bylaws arises under Title IV of the LMRDA, and must be dismissed because this Court lacks subject matter jurisdiction over civil actions under Title IV.

An appropriate Order accompanies this Memorandum Opinion.